584 So.2d 1027 (1991)
Scott McMURRAIN, Petitioner,
v.
Stewart FASON, d/b/a PC Systems, Respondent.
No. 91-2232.
District Court of Appeal of Florida, First District.
July 22, 1991.
Rehearing Denied August 21, 1991.
*1028 Claude R. Walker of Rand & Walker, Tallahassee, for petitioner.
David K. Miller of Broad & Cassel, Tallahassee, for respondent.
ZEHMER, Judge.
Scott McMurrain and PC Systems of Tallahassee, Inc. (McMurrain), petition for a writ of certiorari to review a non-final order entered in this prejudgment replevin proceeding after remand of this case on the prior appeal.[1] The order declined to provide McMurrain any relief upon the failure of Stewart Fason, d/b/a PC Systems (Fason), to return the property seized by Fason pursuant to the prejudgment writ of replevin that we ordered dissolved, and referred the parties to mediation. We grant the petition, quash the reviewed order, and direct the trial court to conduct further proceedings and enter an order granting McMurrain relief as provided herein.
The history of this case is set out in our earlier opinion and need not be repeated here. On that appeal, we held that the trial court erred in denying McMurrain's motion to dissolve the prejudgment writ of replevin obtained ex parte by Fason.[2] On remand, the trial court dissolved the writ and *1029 directed Fason to return all of the seized property to McMurrain. Fason filed a motion requesting that the trial court vacate or modify the order dissolving the writ, asserting that he could not return the seized property because it had been sold. Fason had posted a bond pursuant to section 78.068(3), Florida Statutes (1989),[3] when the order granting the prejudgment writ of replevin was entered. The bond was conditioned "that if Plaintiff shall prosecute this action to effect and without delay and that if the Defendant recovers judgment against Plaintiff, and Plaintiff returns the property replevied, if so ordered, and pays to Defendant damages and costs recovered by Plaintiff against Defendant for the wrongful replevin, this Bond is void; otherwise it remains in force." Fason submitted in this motion that the appropriate alternative form of relief would be for the court to require that the surety bond be maintained in effect to protect McMurrain against the loss of value of whatever interest McMurrain was ultimately found to have in the seized property. McMurrain objected to Fason's suggested alternative remedy, moving instead for a judgment in his favor in the amount of the value of the property. The trial court entered an order that provided in part:
2. On February 25, 1991, this Court, in accordance with the First District Court of Appeal's mandate, entered an Order Dissolving the Writ of Replevin and ordered that the property seized be immediately returned to Defendants.
3. The inventory, obtained pursuant to the Writ, has been co-mingled or sold in the normal course of Plaintiffs' business, making the return of the replevied property impossible. Although isolated items similar to those recovered are still in stock today, there is no way to determine whether they are the exact items recovered on October 13, 1989.
4. The District Court of Appeal's Mandate did not specify what alternative relief the defendants should have if the replevied property could not be returned. This Court is without authority to alter the Mandate of the First District Court of Appeal without first obtaining permission from the Appellate Court.
5. When Plaintiffs responded that they were unable to comply with this Court's order because the inventory was either unidentifiable or sold, Defendants filed the instant motion to determine the value of the inventory taken. The value sought by the parties is appropriately a question for the jury to determine.
Based on the foregoing, it is ORDERED and ADJUDGED that the nature and value of the parties interest in the replevied property is disputed and appears to be interrelated with other pending issues, and can not be summarily determined, but can only be decided at trial, it is further
ORDERED and ADJUDGED that Plaintiffs' Motion to Amend Complaint is dismissed without prejudice to refile at a later date. As noted by this Court's Order dated March 25, 1991, no further motions will be heard until mediation has been completed, it is further
ORDERED and ADJUDGED that the jury trial scheduled for May 20-24, 1991, shall be continued until the Court has been notified that meditation [sic] has been set.
DONE and ORDERED in Chambers at Leon County Courthouse, Tallahassee, Florida, this 9th day of April, 1991.
In his petition for review, McMurrain argues that this order, if allowed to stand, will effectively allow one to unlawfully seize another's property before final judgment and thereafter avoid liability for its return simply by selling the property as soon as possible after seizure. He asserts that such procedure would utterly destroy those property rights that are constitutionally protected in respect to prejudgment replevin under section 78.068, Florida Statutes (1989). He further argues that a defendant's *1030 right to an immediate post-seizure hearing is essential to the constitutional validity of the Florida replevin statute, and that reversal of the order is necessary to give any meaning and effect to the requirement for an immediate hearing. In essence, McMurrain argues that he is entitled to redress for the wrongful taking, which deprived him of his entire store inventory and its use pending trial on the merits of Fason's claims.
In his response to McMurrain's petition, Fason does not address McMurrain's arguments regarding the violation of constitutional protections provided by the replevin statute. Instead, he argues that McMurrain is improperly attempting to have this court determine the nature and value of his interest in the seized property before the trial court can rule on this ultimate issue. He further argues that such issue involves disputed facts that must initially be resolved by the trial court, and that this issue cannot be severed from the interrelated issues of the nature of the parties' underlying business relationship and the amount of McMurrain's offsetting obligations to Fason, i.e., the pending claims raised by Fason's complaint.[4]
From the petition and response, we distill the issue presented to be whether Fason, having reported to the court that he is unable to comply with the order to return the property wrongfully seized under an invalid prejudgment writ of replevin, is nevertheless entitled to proceed to final judgment in a plenary trial on all issues made in the original complaint, including the ultimate question of his right to possession of the property by replevin, before McMurrain is entitled to any monetary relief under the bond posted as security for the wrongful prejudgment seizure of the property.
To resolve this issue, it is imperative to identify the essential differences between an ordinary replevin action to obtain possession of property upon final judgment and the remedy afforded by a prejudgment writ of replevin to obtain possession of property ex parte to be held for security purposes pending trial. Chapter 78, Florida Statutes (1989), is somewhat confusing because the sections dealing with both concepts are intermingled throughout the chapter. Nevertheless, a careful reading of these provisions demonstrates the following basic distinctions between the two concepts. The ordinary action for replevin provides for the recovery of personal property wrongfully detained by another, together with damages sustained by the wrongful taking or detention. § 78.01, Fla. Stat. (1989); see generally 12 Fla.Jur.2d Conversion and Replevin §§ 30-73 (1979). This action provides an avenue of relief for obtaining possession of the personal property after a trial on the merits and the entry of final judgment. Thus, all due process requirements affecting the right to notice and hearing of the plaintiff's claimed right to possession are satisfied by the notice and holding of a trial on the merits leading to the entry of judgment.
The prejudgment writ of replevin, on the other hand, is a summary procedure for the limited purpose of obtaining possession of property on an ex parte application to the court to secure it against "danger of destruction, concealment, waste, removal from the state, removal from the jurisdiction of the court, or transfer to an innocent purchaser during the pendency of the action." § 78.068(2), Fla. Stat. (1989). The defendant's right to an immediate hearing given by the statute is essential to satisfy the constitutional due process requirements that a person cannot be deprived of his property without reasonable notice and opportunity to put the plaintiff to proof of his claim of right to immediate possession. § 78.068(6), Fla. Stat. (1989). This is made abundantly clear by a quick review of the United States Supreme Court's decisions in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), and Mitchell v. *1031 W.T. Grant, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).
In Fuentes, the Supreme Court held the Florida and Pennsylvania prejudgment replevin laws as they then existed unconstitutional. Those laws permitted a plaintiff to obtain a prejudgment writ of replevin through a summary process of ex parte application to a court clerk, upon the posting of a bond for double the value of the property to be seized; no hearing or prior notice to the party in possession was required. Under the Florida law,[5] the Court said, the applicant was required to "file a complaint, initiating a court action for repossession and reciting in conclusory fashion" his lawful entitlement to possession of the property and his promise to return the property to the defendant if a judgment was entered against him. Fuentes v. Shevin, 407 U.S. 67, at 74, 92 S.Ct. 1983, at 1991. On the sole basis of the bond and complaint, the writ issued and commanded the officer to whom it was directed to replevy the goods and to summon the defendant to answer the complaint. The officer seizing the property was required to keep it for three days, during which time the defendant could reclaim possession by posting his own security bond in an amount double the property's value. Absent the defendant's posting of such a bond, the property was to be transferred to the plaintiff, pending final judgment in the underlying repossession action. The Pennsylvania law was essentially similar to the Florida law, although it did not require the applicant for the writ to initiate a repossession action or allege legal entitlement to the property; rather, the applicant was merely required to file an "affidavit of the value of the property to be replevied." 407 U.S. at 78, 92 S.Ct. at 1993. The defending party whose property was seized by prejudgment replevin could immediately regain possession only by posting his own counterbond within three days of seizure, and could obtain a post-seizure hearing only by initiating a suit to recover the property. The Supreme Court held both of these laws unconstitutional, stating that they violated the Due Process Clause of the Fourteenth Amendment because they allowed a prejudgment writ of replevin to be summarily issued without a prior evidentiary hearing based on the applicant's bare assertion of entitlement (Florida law) or an affidavit merely stating the value of the property to be replevied (Pennsylvania law). The Court emphasized the narrow scope of its holding, and stated that it did not question the power of a state to seize goods before a final judgment in order to protect the security interests of creditors "so long as those creditors have tested their claim to the goods through the process of a fair prior hearing." 407 U.S. at 96, 92 S.Ct. at 2002 (emphasis added).
Two years later, in Mitchell v. W.T. Grant, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), the Supreme Court reviewed a portion of the Louisiana Code of Civil Procedure authorizing a mortgage or lien holder to obtain a writ of sequestration to forestall waste or alienation of the property encumbered by the mortgage or lien pending litigation to final judgment. The Louisiana Code authorized issuance of the writ upon the creditor's ex parte application without notice to the debtor or an opportunity for a hearing, but the writ would issue only upon a verified affidavit and a judge's authority after the creditor's filing of a sufficient bond. The debtor could immediately seek dissolution of the writ, which the court was constrained to order unless the creditor proved the grounds supporting its issuance at an immediate hearing requested by the debtor. If the writ was dissolved, the court was authorized to award the debtor damages, including attorney's fees, for wrongful issuance of the writ, and thereafter the case was to proceed as if no writ had issued. The Supreme Court receded from its broad holding in Fuentes that the opportunity for a hearing prior to seizure was essential to the validity of a statute authorizing prejudgment seizure of property, and concluded *1032 that the Louisiana procedure effected a constitutional accommodation of the parties' conflicting interests. The Court stressed the points of the Louisiana law that required a strong showing by the petitioning creditor before the writ could issue, the opportunity for the debtor to obtain an immediate hearing on an application to dissolve the writ, and the requirement that the writ be dissolved and damages for wrongful issuance be awarded to the debtor if the creditor failed to prove at that hearing the grounds upon which the prejudgment writ was issued.[6] The Court also noted that under the Louisiana law, even if the creditor retained possession of the property pending litigation, the creditor had no right to sell the property until entry of a final judgment on the merits. 416 U.S. at 606 n. 7, 94 S.Ct. at 1899 n. 7. The Court characterized the Louisiana system as protecting
the debtor's interest in every conceivable way, except allowing him to have the property to start with, and this is done in pursuit of what we deem an acceptable arrangement pendente lite to put the property in the possession of the party who furnished protection against loss or damage to the other pending trial on the merits.
416 U.S. at 618, 94 S.Ct. at 1905. To ensure the validity of the Florida prejudgment replevin statute, we believe it must be construed to provide, as a minimum, the essential characteristics discussed in Mitchell.
The Florida statutory procedure applied in this case, sections 78.068-78.21, Florida Statutes (1989), has been said to have been fashioned after the Louisiana law found constitutional in Mitchell.[7] In our earlier opinion, we emphasized the strong showing the Florida law now requires of a petitioner before a prejudgment writ of replevin can lawfully issue, the requirement of an immediate evidentiary hearing upon the defendant's request to dissolve the writ, and the requirement that the court dissolve the prejudgment writ if the petitioner fails to prove the grounds supporting the writ at that hearing. McMurrain v. Fason, 573 So.2d 915 (Fla. 1st DCA 1990). We again emphasize that under the holdings of Fuentes and Mitchell, Florida's prejudgment replevin procedure would be unconstitutional in the absence of these protections. Under the holdings of these cases, the immediate post-seizure hearing on a motion to dissolve the prejudgment writ is the point at which the plaintiff is "put to his proof" of his right to possession of the property pending trial. Upon a plaintiff's failure to prove such right, the trial court is mandated to dissolve the prejudgment writ, order the wrongfully seized property returned to the defendant, and award damages, if any have been incurred, to the defendant. The prejudgment replevin proceeding is, at this point, concluded for all practical purposes. If the complaint contains counts for ordinary replevin and other causes of action, as does the complaint in this case, those claims obviously remain pending for trial. However, the continuing pendency of those claims does not serve as a defense to the defendant's right to relief immediately upon dissolution of a wrongfully issued prejudgment writ of replevin. This is necessarily so because the dissolution of the prejudgment writ does not adjudicate the issue of the plaintiff's ultimate possessory interest in the property but only adjudicates the plaintiff's right to immediate possession pending final adjudication of the replevin and other actions. Weigh Less For Life, Inc. v. Barnett Bank of Orange Park, 399 So.2d 88 (Fla. 1st DCA 1981). We agree with McMurrain that unless he is *1033 given immediate relief without regard to the pending cause of action, the mandate of this court will be meaningless and substantially ineffective.
In this case, Fason could not comply with the trial court's order to return the seized property because he sold it prior to dissolution of the writ. Indeed, he did not even seek court approval of this action. Ordinarily, a party in possession of property under a prejudgment writ of replevin is obligated to hold it in safekeeping pending the completion of the litigation to final judgment. Nothing in Chapter 78, Florida Statutes (1989), authorizes a person holding seized property pursuant to a prejudgment writ of replevin to sell or dispose of the property before the entry of final judgment. Although this chapter does not expressly forbid the plaintiff from selling or disposing of the seized property before entry of a final judgment at his discretion, such a proscription is inherent in its provisions. For example, section 78.068(2), provides that a prejudgment writ may issue if the court finds
that the defendant is engaging in, or is about to engage in, conduct that may place the claimed property in danger of destruction, concealment, waste, removal from the state, removal from the jurisdiction of the court, or transfer to an innocent purchaser during the pendency of the action ...
This provision makes clear that the change of possession pursuant to a prejudgment writ is primarily for the purpose of protecting the property, and authorizes a change of possession or continued possession in the party who furnishes "protection against loss or damage to the other pending trial on the merits." Mitchell, 416 U.S. at 618, 94 S.Ct. at 1905. Fason thwarted this purpose by selling the property prior to entry of a final judgment adjudicating his ultimate entitlement to it.
The bond posted by Fason to insure the safekeeping of the seized property stands in the place of that property once it has been transferred, lost, or destroyed. Fason's failure to return the seized property pursuant to court order after the ruling that the prejudgment writ of replevin was wrongfully issued constituted a breach of the conditions of the bond giving rise to immediate liability thereunder by both the principal and surety for the value of the property and any consequential damages caused by the unlawful taking. See § 78.068(3), Fla. Stat. (1989); 77 C.J.S. Replevin §§ 316-18 (1952). Thus, McMurrain's motion for payment of the value of the seized inventory based on the bond should have been adjudicated by the court independently of Fason's still pending claims against McMurrain, because the determination that the prejudgment writ had wrongfully issued and Fason's failure to immediately return the seized property fixed McMurrain's right to an immediate recovery under the bond.
Unfortunately, the order under review gave no effect whatsoever to McMurrain's legal right to immediate relief pursuant to the statute and bond. Rather, upon considering Fason's admission that he could not return the property as ordered by the court, the trial court denied McMurrain's motion for judgment on the bond, concluding that the court was "without authority to alter the Mandate of the First District Court of Appeal without first obtaining permission from the Appellate Court... ." This conclusion was erroneous. The trial court was not required to alter the mandate of this court in order to grant McMurrain appropriate redress. Our decision and mandate determined that the prejudgment writ had been wrongfully issued and directed that it be dissolved. The mandate carried with it, by implication, a direction to accord McMurrain appropriate remedies under the statute and bond. Section 78.20 provides that upon the dissolution of a prejudgment writ, the defendant is to
have judgment against plaintiff for his damages for the taking, if any, of the property, attorney fees, and costs. The remedies provided in this section and s. 78.21 shall not preclude any other remedies available under the laws of this state.
*1034 Section 78.21 provides that where the property is not redelivered to the defendant and the defendant prevails,
judgment shall be entered against [the] plaintiff for possession of the property and costs and against him for the value of the property and costs in the same manner as provided in s. 78.19 for judgment in favor of plaintiff... . The remedies provided in s. 78.20 and this section shall not preclude any other remedies available under the laws of this state.
These sections authorize the trial court, upon dissolution of the prejudgment writ and failure to return the property, to assess damages sustained by McMurrain as a result of the wrongful taking and to order payment pursuant to the bond in that amount. Contrary to the court's finding in the order under review, it was not necessary for the trial court to determine the nature and value of the parties' respective interests in the property based on Fason's other pending claims before making this award. The amount of damages so assessed would include not only the value of the property seized, but could also include an award of attorney's fees and costs as set out in the statutes and damages to compensate for harm to the defendant's business, wrongful conversion of the property,[8] and nonpecuniary injuries such as described in Mitchell.[9]
The writ of certiorari is granted and the order denying McMurrain relief on his motion for damages is quashed with directions that the trial court proceed as expeditiously as possible to assess the amount of McMurrain's damages and not postpone that decision until Fason's other pending causes of action are adjudicated on the merits.
JOANOS, C.J., and SHIVERS, J., concur.
NOTES
[1] McMurrain v. Fason, 573 So.2d 915 (Fla. 1st DCA 1990).
[2] The prejudgment writ authorized Fason to take possession of the inventory of a retail computer store being operated by McMurrain. McMurrain contends that the entire inventory of the store was seized under the writ.
[3] Section 78.068(3) provides:

The petitioner must post bond in the amount of twice the value of the goods subject to the writ or twice the balance remaining due and owing, whichever is lesser as determined by the court, as security for the payment of damages the defendant may sustain when the writ is obtained wrongfully.
[4] The original complaint alleged separate causes of action for civil theft, breach of contract, and misappropriation of trademark/tradename in addition to the count seeking replevin. The replevin count sought permanent possession of the property pursuant to the terms of the contract, and not simply the right to hold the property as security pending trial.
[5] The United States Supreme Court referred to §§ 78.01-78.13, Fla. Stat. Ann. (Supp. 1972-1973). See §§ 78.01-78.13, Fla. Stat. (1971).
[6] The Supreme Court noted that authorized damages would compensate the debtor for the period during which he was deprived of the use of the property, but that damages were not restricted to pecuniary loss. Damages could "encompass injury to social standing or reputation as well as humiliation and mortification." 416 U.S. at 606, n. 8, 94 S.Ct. at 1899, n. 8 (citation omitted). Presumably, this element was essential to the Court's balancing of the respective interests of the parties.
[7] See J. Anstead's comment in his dissent to Landmark First National Bank of Fort Lauderdale v. Beach Bait and Tackle Shop, 449 So.2d 1287 (Fla. 4th DCA 1983), rev. denied, 459 So.2d 1039 (Fla. 1984).
[8] The wrongful sale of personal property of another amounts to conversion. 12 Fla.Jur.2d Conversion and Replevin § 10 (1979).
[9] See note 3, supra.